IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
FILE NO.: 5:25-cv-140

| | | |
|---|---|---|
| VERONICA POLK, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT** |
| EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and FAIR COLLECTIONS & OUTSOURCING, INC., | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

Veronica Polk ("Plaintiff") brings this Complaint against Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union") (collectively, "Credit Bureau Defendants"), and Fair Collections & Outsourcing, Inc. ("FCO"), (all collectively, "Defendants"), for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of the Credit Bureau Defendants' inaccurate reporting of an alleged unpaid account on Plaintiff's credit files and reports, their subsequent failure to reasonably reinvestigate Plaintiff's dispute of the same, and FCO's failure to investigate Plaintiff's credit disputes and accurately instruct the Credit Bureau Defendants to modify, delete, or permanently block credit account information on Plaintiff's credit report that was inaccurate and misleading.

**PRELIMINARY STATEMENT**

1. Plaintiff's claims arise of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein they reported and failed to investigate an alleged debt with FCO that she did not incur. Plaintiff provided the Credit Bureau Defendants with several detailed disputes

explaining why the reporting was inaccurate. However, the Credit Bureau Defendants each failed in their duties to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and failed to conduct reasonable investigations for each submitted dispute.

2. Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of the contents of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file and report(s), in violation of the FCRA, 15 U.S.C. § 1681i.

3. Plaintiff also brings claims against Defendant Fair Collections & Outsourcing, Inc. for failing to reasonably investigate Plaintiff's disputes and review all relevant information provided by the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1). Plaintiff submitted several detailed disputes with supporting documentation to each Credit Bureau Defendant that were relayed to FCO. Plaintiff also directly disputed this alleged debt with FCO and requested validation of the debt, which she never received. FCO failed to reasonably review Plaintiff's disputes, failed to conduct a lawful reinvestigation, and continued to furnish false information to the Credit Bureau Defendants long after it knew, or should have known, the account was inaccurate.

4. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, and costs and attorneys' fees from the Defendants for their willful and/or negligent violations of the FCRA, 15 U.S.C. §§ 1681, *et seq*.

Page **2** of **16**

Case 5:25-cv-00140-KDB-SCR    Document 1    Filed 09/03/25    Page 2 of 16

## THE PARTIES

5. Plaintiff Veronica Polk ("Plaintiff") is a natural person who resides in Mooresville, North Carolina, Iredell County, and is a "consumer" as that term is defined in 15 U.S.C. 1681a(c).

6. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation authorized to do business in the State of North Carolina, including in this District.

7. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumers reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

8. Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company authorized to do business in the State of North Carolina, including in this District.

9. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

10. Defendant Fair Collections & Outsourcing, Inc., ("FCO"), is a foreign corporation authorized to do business in the State of North Carolina, including this District.

11. FCO is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

12. This Court has federal question jurisdiction conferred by 28 U.S.C. 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

Page 3 of 16

Case 5:25-cv-00140-KDB-SCR     Document 1     Filed 09/03/25     Page 3 of 16

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) since a material portion of the events or omissions giving rise to the claim occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

14. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

15. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…" 15 U.S.C. § 1681(b).

16. The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

### The Credit Bureau Defendants' Processing of Credit Information

17. The major credit bureaus, Experian, and Trans Union, regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

18. These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

19. Experian and Trans Union collect information from thousands of furnishers.

20. The process by which Experian and Trans Union receive, sort, and store information is largely electronic.

21. Experian and Trans Union take the credit information reported by furnishers and create consumer credit files.

22. Experian and Trans Union maintain credit files on more than 200 million consumers.

23. Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**The Credit Bureaus' Method for Considering Consumer Credit Report Disputes**

24. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

25. Consumer reporting agencies Experian and Trans Union have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric- alpha language specific to the credit reporting industry.

26. Furnishers report credit information to Experian and Trans Union through the use of coded tapes that are transmitted to Experian and Trans Union on a monthly basis through software known as Metro 2.

27. Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports

issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

28. Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ( ACDV ) electronic form.

29. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

30. These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

31. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

32. The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

33. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and returning the ACDV to the respective credit bureau(s) via e-OSCAR.

### FCO Misattributes a Debt to Plaintiff

34. Plaintiff discovered on her credit an alleged debt being collected on by FCO for the original creditor Berkshire Hathaway Homeservices.

35. This account was inaccurately reported as a delinquent collection account despite Plaintiff never having had any relationship, lease, or debt with Berkshire Hathaway Homeservices. Plaintiff previously rented from Rahban Property, not Berkshire Hathaway, and successfully disputed that debt in North Carolina state court in 2018, where the case was dismissed.

36. FCO began furnishing this alleged debt to Experian and Trans Union as a collection tradeline, misattributing the Rahban Property matter to Berkshire Hathaway.

37. The alleged debt is being reported as a collection account beginning May 2021 for an unpaid balance of $5,752.

### **The First Dispute**

38. On or about April 29, 2024, Plaintiff mailed dispute letters to Experian and Trans Union, disputing the inaccurate FCO tradeline. She enclosed a copy of her prior court records confirming dismissal of the landlord's claim.

39. On or about May 31, 2024, Plaintiff also submitted a dispute against Experian and FCO through the Consumer Financial Protection Bureau (CFPB). FCO responded on June 15, 2024, but failed to provide validation of the debt and instead produced a ledger from Rahban Property, not Berkshire Hathaway.

40. On or about June 26, 2024, Experian completed its investigation of Plaintiff's dispute and returned the results of the investigation to her. Experian stated the account was "verified" and continued to inaccurately report the tradeline as a collection account.

41. Trans Union also continued to report the alleged Berkshire Hathaway debt as a collection charge-off despite Plaintiff's dispute.

## The Second Dispute

42. On or about April 7, 2025, Plaintiff sent additional dispute letters to Experian and Trans Union via certified mail. In those disputes, she again explained that she never had any account with Berkshire Hathaway, attached her 2018 court dismissal order, and identified the account as inaccurate.

43. As of May 12, 2025, Experian responded to Plaintiff's dispute but failed to remove the FCO account, continuing to report it as verified and accurate.

44. Trans Union also failed to remove the FCO account, despite the documentary evidence provided.

## Plaintiff Suffered Actual Harm

45. Experian and Trans Union continued to report the derogatory account on Plaintiff's credit reports, despite being notified that this information was false.

46. Plaintiff attempted to resolve these matters with Defendants and her credit was significantly damaged by Defendants' failure to correct the inaccurate reporting.

47. As a result of the defamatory nature of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

   a. Denial of housing applications and inability to obtain stable housing, forcing Plaintiff to live in hotels and with relatives;

   b. Separation from her children due to unstable housing arrangements;

   c. Denial of mortgage opportunities and other forms of credit because of derogatory accounts;

   d. Out-of-pocket expenses related to temporary lodging, communication costs, and certified mail for disputes;

Page **8** of **16**

Case 5:25-cv-00140-KDB-SCR    Document 1    Filed 09/03/25    Page 8 of 16

e. Loss of time attempting to cure the error; and,

    f. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

**Defendants' Conduct was Willful**

48. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

49. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

50. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. The Credit Bureaus' dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

51. Like the Credit Bureaus, FCO has had actual notice of established law defining its duties under § 1681s-2(b). The leading case in this regard is the Fourth Circuit's decision, *Johnson v. MBNA Am. Bank, NA*. 357 F.3d 426 (4th Cir. 2004). *Johnson* and its progeny long ago established that the § 1681s-2(b)(1)(A) directive to furnishers to "conduct an investigation with respect to the disputed information" required a "reasonable investigation," that is, a "careful" or

"searching inquiry," as opposed to a "superficial" one, "to determine whether the disputed information can be verified." *Johnson*, 357 F.3d at 430–31.

52. Defendants' procedures imposed on the Plaintiff and similarly situated consumers are an unjustifiable and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT I:
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim For Relief Against Experian and Trans Union)

53. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-52 as if fully stated herein.

54. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

55. On multiple occasions from 2024 to 2025, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

56. Despite actual and implied knowledge that the FCO tradeline was inaccurate, the Credit Bureau Defendants readily sold such false reports to one or more third-parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

57. The Credit Bureau Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

58. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, denial of credit; denial of

Page **10** of **16**

Case 5:25-cv-00140-KDB-SCR     Document 1     Filed 09/03/25     Page 10 of 16

housing; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to her credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of having being unable to secure housing for children due to this inaccurate collection account.

59. The Credit Bureau Defendants' conduct, action, and inaction was willful, rendering them each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

60. Plaintiff is entitled to recover attorney's fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II:
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## (Second Claim for Relief Against Experian and Trans Union)

61. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-60 as if fully stated herein.

62. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposed a 30-day time limitation for the completion of such an investigation. *Id*.

63. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the

accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

64. On multiple occasions, Plaintiff initiated disputes with the Credit Bureau Defendants requesting that they correct or delete the inaccurate tradelines, where no balance was owed and where she is not responsible, and provided court documents in support.

65. Either the Credit Bureau Defendants conducted *no* reinvestigation of Plaintiff's disputes, or such reinvestigations were so shoddy and unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit files and credit reports.

66. The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit files after it received multiple notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of the disputed tradeline; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

67. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, denial of credit; denial of housing; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to her credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of having being unable to secure housing for children due to this inaccurate collection account.

68. The Credit Bureau Defendants' conduct, action, and inaction was willful, rendering them each liable for actual or statutory damages, and punitive damages in an amount to be

Page **12** of **16**

Case 5:25-cv-00140-KDB-SCR     Document 1     Filed 09/03/25     Page 12 of 16

determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

69. Plaintiff is entitled to recover attorney's fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III:**
**15 U.S.C. § 1681s-2(b)(1)(A) and (B)**
**Failure to Conduct a Reasonable Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(First Claim For Relief Against FCO)**

70. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-69 as if fully stated herein.

71. FCO published the aforementioned disputed account to the Credit Bureau Defendants, despite the fact that there was no unpaid balance on the account from her previous apartment.

72. On one or more occasions, by example only and without limitation, FCO violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

73. On one or more occasions, by example only and without limitation, FCO violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the Credit Bureau Defendants.

74. Based on the manner in which the Credit Bureau Defendants responded to – or did not respond to Plaintiff's disputes, representing that FCO had "verified" the supposed accuracy of its reporting, Plaintiff alleges the Credit Bureau Defendants did in fact forward the Plaintiff's disputes via an ACDV to FCO.

75. FCO understood the nature of Plaintiff's disputes when it received the ACDVs from the Credit Bureau Defendants.

76. FCO violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of the aforementioned Account; by failing to review all relevant information regarding the same; by failing to accurately respond to the various ACDVs sent to it by the Credit Bureau Defendants; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccuracies of the account to the Credit Bureau Defendants.

77. As a result of FCO's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff has suffered a range of actual damages including, without limitation, denial of credit; denial of housing; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to her credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of having being unable to secure housing for children due to this inaccurate collection account.

78. FCO's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

79. Plaintiff is entitled to recover attorney's fees and costs from FCO in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

# COUNT IV:
## 15 .S.C. § 1681s-2(b)(1)(E)
### Failure to Accurately Correct and Update or Delete Plaintiff's Information After Receiving Plaintiff's Disputes from Credit Bureau Defendants
### (Second Claim For Relief Against FCO)

80. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-79 as if fully stated herein.

81. FCO violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's dispute from the Credit Bureau Defendants. This failure to correct Plaintiff's information resulted from FCO's failure to investigate as articulated herein, and after FCO received notice of Plaintiff's disputes from the Credit Bureau Defendants.

82. As a result of FCO's violations of 15 U.S.C. § 1681s-2(b)(1)(E), Plaintiff has suffered a range of actual damages including, without limitation, denial of credit; denial of housing; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to her credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of having being unable to secure housing for children due to this inaccurate collection account.

83. FCO's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84. Plaintiff is entitled to recover attorney's fees and costs from FCO in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment and actual, statutory, and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just and proper.

Dated: September 3, 2025.

Respectfully submitted,

*/s/ Ian E. Vance*
Ian E. Vance
N.C. State Bar No. 60056
MAGINNIS HOWARD
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:    919-526-0450
Fax:   919-882-8763
ivance@carolinalaw.com

*ATTORNEY FOR PLAINTIFF*